MELVILLE SHOE CORPORATION *vs.* HARRY KOZMINSKY.

Suffolk.   May 22, 1929. — June 27, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Way,* Private. *Easement.*

By deed in 1754, the owner of real estate at the corner of what now is Washington Street and School Street in Boston granted a right of way across the rear of his lot to the owner of premises next adjoining on Washington Street. By an agreement in writing in 1902 between the owners of the two parcels, the owner of the servient tenement was permitted to repave the passageway and to cover it with a glass roof, the agreement expressly providing that such acts should not affect the rights of the owner of the dominant tenement in said passageway. In 1923 a lessee of the dominant estate for a certain rent by deed granted to one, who since 1902 had maintained a store on the servient estate on School Street which included the passageway as a part of its floor space, "the exclusive use and right of way in, through and upon said passageway in so far as said grantor can legally convey the same for such purpose as he may have occasion to use the same for" a term ending October, 1927. The entrance from the way to the dominant tenement was closed by a fire door from the servient tenement and by a nailed door from the dominant tenement. In 1925 the then lessee of the servient tenement sublet for ten years to the owner of the store on School Street his store premises, subject to such right of way as the owner of the dominant tenement and those claiming under him had in the way, it being "understood and agreed that the Lessee shall make his own arrangements with the" owners of the dominant estate or those claiming under him "for the exclusive use of and right of way in, through and upon" the passageway. An assignee of the lessee of the dominant tenement, then a building of several stories, sublet until 1939 the street floor and basement to a corporation, the lease containing the provision, "the landlord reserves to itself the use of the right of way from School Street to Washington Street through the premises

herein leased"; and that corporation then sublet a space containing eight square feet opposite the door leading into the dominant tenement, "together with a right of way through the passageway leading to the demised premises from School Street in so far as we have any interest in said right of way," to one who by a suit in equity sought to compel the owner of the store on School Street to cease obstructing the passageway and using it as a part of his store. The bill was dismissed. *Held,* that

(1) A ruling by the trial judge that, in dealing with the question of what rights pass by implication, the existing circumstances and the actual condition and situation of that which is granted at the time of the grant may be looked at, was correct;

(2) The easement was an easement appurtenant, and, in the circumstances, was appurtenant to the entire building and land on the dominant estate adjoining the passageway, and not to any particular part thereof;

(3) The trial judge was warranted in refusing to imply a right of way over the passageway in favor of the plaintiff's lessor under the provisions of the lease it had received, including the reservation applicable to the passageway;

(4) The decree dismissing the bill was proper.

BILL IN EQUITY, filed in the Superior Court on October 31, 1928, and described in the opinion.

The suit was heard in the Superior Court by *Cox,* J. Material facts found by him are stated in the opinion. By his order a final decree was entered dismissing the bill. The plaintiff appealed.

*J. P. Vaccaro, (J. P. Rooney* with him,) for the plaintiff.
*M. Caro, (G. Broomfield* with him,) for the defendant.

CROSBY, J.   This is a bill in equity wherein it is alleged that the plaintiff is lessee of a part of a small building in the rear of the building numbered 295 and 297 Washington Street, Boston, together with a right of way through the passageway leading to this building from School Street; that the plaintiff has a right to pass over the said passageway; that the defendant as lessee and occupant of the store on the street floor of the building "number 8 and/or 8a on said School Street" has so arranged, laid out and planned said store that it appears that the passageway is part of the store. The plaintiff prays that the defendant be enjoined from obstructing the passageway, or using it in a manner inconsistent with the rights of the plaintiff, and that the defendant be ordered to change his store so that the passageway will not appear

to be a part of his store.   The case was heard by a judge of the Superior Court, who made findings of fact, and entered a decree dismissing the bill.   As the evidence is not reported, the findings of fact must be considered as final.   The only question before this court is whether, upon the facts found, the decree was rightly entered.   *Nelson* v. *Wentworth,* 243 Mass. 377.   *Commissioner of Banks in re Cosmopolitan Trust Co.* 249 Mass. 144.   *Wood* v. *Culhane,* 265 Mass. 555.

The facts found in substance are as follows: "In 1754 John Doan owned a parcel of land in Boston at the southerly corner of Marlborough (now Washington) and School streets.   The Inches family owned the parcel adjoining on Marlborough Street, both parcels extending westerly toward Tremont Street some one hundred twenty-five feet.   In that year the said Doan and his wife Jane executed an instrument which is dated the second day of May," by which they granted to the Inches family "the free and uninterrupted use & privilege of a passageway of four feet and an half wide leading from their house and land into School Street between the two brick walls as they now stand," and covenanted that the Inches family "their heirs and assigns shall and may from time to time and at all times forever hereafter by force and virtue of these presents lawfully peaceably and quietly use occupy improve and enjoy with us and our heirs the passage-ways aforesaid without any manner of let hindrance or moles-tation whatsoever."   The passageway leading from the Inches land to School Street is the one involved in this suit.

The ownership of the "Inches land" has remained in that family to the present time.   The Doan parcel was parti-tioned in 1767, and all the partition deeds refer to the passage-way, and each of the grantees under the partition was given the right to use the passageway.   The locus of the passage-way can be determined.   The title to the Doan parcel as it stood in its entirety in 1754 was acquired between 1794 and 1802 by one Greenough, and remained in his family until January, 1902, when it was conveyed to the trustees of the Trimountain Trust.   The passageway in question was in-cluded in this conveyance.   On October 1, 1902, an agree-ment was entered into between the "Owners of the Inches

estate" and the trustees of the Trimountain Trust, owners of the fee in the passageway, whereby the owners of the "Inches land" permitted the Trimountain Trust to cover over a portion of the same with a glass roof, and to repave the passageway, the agreement expressly providing that these acts should not affect the rights of the "Owners of the Inches Estate" in said passageway. The ownership of the properties involved, so far as appears from the record, still remains in the same parties as in 1902, the Trimountain Trust owning the servient tenement and the Inches family owning the dominant tenement. "At some time after the above-described indenture was executed and recorded, a glass roof was installed over that part of the passageway which extended from the rear wall of the building overhanging the School Street end of the passageway to the northerly wall of the building on the Inches land." The defendant has a store at 8A School Street which includes the passageway.

The trial judge viewed the premises. He found that "There is a door in the Inches building, now nailed up, which would open upon the southerly end of the passageway"; that "The easterly part of the front of the defendant's store is a show window, and where the passageway began there is a stone threshold and a recessed door, so that today, as one looks from School Street, there is no sign of any passageway, but on the contrary a complete store front with signs above"; that "Inside the store the passageway is paved with brick" and "the floor of the store is of wood"; that at the end of the store "there is a double fire door which extends from the floor nearly to the ceiling"; and which "is directly opposed to and against the door in the Inches building above described"; that the building on the Inches land now covers the entire Inches parcel and is several stories in height. There was no evidence offered as to when or by whom this store front was installed, but the defendant and his father have occupied the store for at least twenty-six years; no evidence was introduced as to what use, if any, was ever made of the passageway before the erection of the store front; and apart from the inference which may be drawn from the agreement of 1902 between the several trustees

hereinbefore described, "there is nothing to aid the court in determining whether the store front, as it now stands, has been in existence more than twenty-six years." At present "The passageway space is occupied by stands and shelves, upon which are displayed the flowers and wares which the defendant sells." The judge found that "for at least twenty-six years, the passageway in question has, to all intents and purposes, been a part of a store, the only entrance to which was through the door on School Street, unless it can be said that there was an entrance from the Inches building through a door which would have to be broken down and through the double fire door." There is no evidence to show any of the dealings of the respective owners of the Inches land or of the Doan parcel from 1902 until December 1, 1923, except that the defendant and his father occupied the premises on School Street as above described.

On August 14, 1924, the Trimountain Trust, the owners of the servient tenement, leased to D. A. Schulte, Inc. the land and buildings at the corner of Washington Street and School Street, "subject to such rights of way as the owners of the adjoining Inches estate may have in the 4½-foot passageway, now covered over extending from said Inches estate to School Street," as set forth in the agreement of 1902 between the Trimountain Trust and the Inches family. On May 22, 1925, D. A. Schulte, Inc. subleased to the defendant the "store on the street floor as now partitioned off and known as and numbered A (8A) on School Street in Boston, Massachusetts," subject also to such right of way as the owners of the Inches estate may have in the passageway, it being "understood and agreed that the Lessee shall make his own arrangements with the Owners of the Inches estate or those claiming under them for the exclusive use of and right of way in, through and upon the said four and one-half foot (4½') passageway, and will pay all charges made by them therefor." This lease was for ten years, beginning October 1, 1927.

Respecting the occupancy of the Inches estate an instrument was introduced in evidence dated December 1, 1923, which recites that "Whereas the lessors, 'doing business as

Sam A. Beckhard & Co., at Boston, are the lessees of an estate at 295–297 Washington Street, in said Boston, Mass., and as such are vested with the right of way, through a passageway from said estate to School Street, in said Boston; and whereas Harry Kozminsky (defendant), of Boston, aforesaid, desires exclusive use of said right of way through and upon said passageway which is located at 8A School Street, in said Boston; Now, Therefore, the lessors grant to the said Kozminsky the exclusive use and right of way in, through and upon said passageway in so far as said grantor can legally convey the same for such purpose as he may have occasion to use the same for the term beginning December 1, 1923, and ending October 1, 1927.'" The defendant paid the lessors the sum of $400 a year. The lessors reserved to themselves the use of the passageway upon the determination of the aforesaid term. On July 1, 1924, the owners of the Inches estate leased the whole of the building at 295–297 Washington Street together with a right of way through the passageway leading to the demised premises from School Street to Sam A. Beckhard & Co. This lease was for the term of fifteen years, beginning July 1, 1924, and cancelled the prior sublease under which at that time the Sam A. Beckhard & Co. was in possession. By a lease dated November 6, 1925, Sam A. Beckhard & Co. leased the entire building 295–297 Washington Street to the R. & W. Realty Co. Inc. together with the whole of the small building in the rear, the only entrance to which is through the store at 297 Washington Street, together with the right of way through the passageway leading to the demised premises from School Street. The term of this lease was two days less than the Beckhard company's term. The judge stated that "There is no evidence as to what is meant by 'the small building in the rear.' On November 13, 1925, the Beckhards assigned to the R. & W. Realty Co., Inc., all their right, title and interest 'here and to' an agreement dated December 1, 1923, between the Beckhards and the defendant . . . " pertaining to the exclusive use of the right of way by the defendant. It is to be observed that the agreement between the Beckhard Company and the defendant, relative to the latter's use of the

passageway, expired on October 1, 1927. On October 24, 1927, the R. & W. Realty Co. Inc. leased to Kaufman Hats, Inc. "the street floor and basement at Nos. 295–297 Washington Street" and "the landlord reserves to itself the use of the right of way from School Street to Washington Street through the premises herein leased." The term of this lease expires on June 28, 1939.

On June 21, 1928, Kaufman Hats, Inc. leased to the plaintiff; it is under this lease that the plaintiff claims the right to the use of the way. By that instrument the lessor leased to the plaintiff "'a certain space in the rear of the store numbered 295–297 Washington Street in said Boston, containing approx. 8 square feet and being the space marked "A" on' a plan attached 'together with a right of way through the passageway leading to the demised premises from School Street in so far as we have any interest in said right of way' for the term beginning June 1, 1928, and ending June 29, 1939, at an annual rental of $1." The space so leased is opposite the door of the Inches building previously described. On October 25, 1928, the plaintiff notified the defendant that it was the lessee of a space in the rear of the store at 295–297 Washington Street and requested him to remove the obstructions in the passageway.

On the facts found the trial judge was of opinion that the plaintiff as lessee of Kaufman Hats, Inc. had failed to show any rights in the passageway, and correctly ruled that "In dealing with the question of what rights pass by implication, the rule seems to be that the existing circumstances and the actual condition and situation of that which is granted at the time of the grant may be looked at." *Salisbury* v. *Andrews*, 19 Pick. 250. *Brande* v. *Grace*, 154 Mass. 210. *Latter's Case*, 238 Mass. 326, 327. *Winchester* v. *O'Brien*, 266 Mass. 33, 36. The judge further ruled that "When the R. & W. Realty Co., Inc., leased to Kaufman Hats, Inc., it 'reserved' the right of way. It leased for a portion of its full term. For all that appears, it retained, unleased, a considerable portion of the building at 295–297 Washington Street. Whether this was a reservation or an exception, *Wood* v. *Boyd*, 145 Mass. 176, the fact remains that it leased 'the

street floor and basement at Nos. 295–297 Washington St.' This was on October 24, 1927, and at a time when that store had had no access to the passageway for upwards of twenty-five years. It was at a time when, from all physical appearances and unless an examination of titles was made, no right of way was in existence. It is doubted whether any rights in the passageway would have passed by implication, had none been mentioned." Upon all the facts the judge found and ruled that the plaintiff was not entitled to maintain the bill and that it should be dismissed.

We are of opinion that on the allegations and facts found the decree dismissing the bill was rightly entered. The right of way is not expressly mentioned as passing in the lease from the R. & W. Realty Co. Inc. to Kaufman Hats, Inc. under which the plaintiff claims as a sublessee. The judge in substance ruled that, considering the circumstances as they existed at the time the lease was entered into by these parties together with the "reservation" in the lease, no rights in the passageway could be implied in favor of Kaufman Hats, Inc.; and consequently none passed to the plaintiff. The easement in this case is conceded to be an easement appurtenant, and from the terms of the original right of way and the acts of the interested parties it must be held to have been appurtenant to the entire Inches building and land adjoining the passageway, and not to any particular part thereof.

"In a conveyance of real estate all rights, easements, privileges and appurtenances belonging to the granted estate shall be included in the conveyance, unless the contrary shall be stated in the deed, and it shall be unnecessary to enumerate or mention them either generally or specifically." G. L. c. 183, § 15. *Dubinsky* v. *Cama*, 261 Mass. 47, 56. In the case at bar the R. & W. Realty Co. Inc., lessee of the entire dominant tenement, subleased a portion of it and reserved to itself the use of "the right of way from School Street to Washington Street through the premises herein leased," in terms leasing to the plaintiff's lessor only "the street floor and basement at Nos. 295–297 Washington Street." As was said by Sheldon, J., in *Raynes* v. *Stevens*,

219 Mass. 556, at page 557, "The lease was merely of the store and the cellar under it . . . . The lease was not of a whole building or a whole floor, but of one room and the cellar underneath it. This gave to the plaintiff no rights outside of the one room and the cellar, except such as plainly were intended by the parties to be included in the leased premises as appurtenant thereto or parcel thereof, either because they were really necessary to the beneficial enjoyment of the demised property for the purpose for which it was leased, or because it was manifest from the condition and situation of the property and the attendant circumstances that they had been designed and appropriated for the benefit of that property." Only such a right of way as is necessary to the enjoyment of the leased premises will pass as appurtenant where there is no express mention of easements, privileges or appurtenances in the indenture. *Oliver* v. *Dickinson*, 100 Mass. 114, 117. The "grant of any thing carries an implication, that the grantee shall have all that is necessary to the enjoyment of the grant, so far as the grantor has power to give it." *Salisbury* v. *Andrews, supra,* at page 255. *Case* v. *Minot*, 158 Mass. 577, 584. *Whitehouse* v. *Aiken*, 190 Mass. 468, 471. *Winchester* v. *O'Brien, supra.* It has been held that the doctrine of implied grants of easements or privileges connected with real estate is applied with some strictness in this Commonwealth. *Case* v. *Minot, supra. Cummings* v. *Perry*, 169 Mass. 150, 155.

We are of opinion that in view of the facts found the trial judge was warranted in refusing to imply a right of way over the passageway in favor of the plaintiff's lessor under the terms of the lease from the R. & W. Realty Co. Inc. to the plaintiff's lessor. In *Gorton-Pew Fisheries Co.* v. *Tolman*, 210 Mass. 402, at page 412, it was said that "It is necessary that the right should have been in use at the time of the grant of the principal estate." See also *Goldsmith* v. *Traveler Shoe Co.* 221 Mass. 482, 484. The general finding against the plaintiff imports a finding that it was not the intention of the parties that the plaintiff's lessor should acquire any rights

in the passageway. *Bottini* v. *Addonizio*, 261 Mass. 456, 457.

We find nothing in the authorities cited by the plaintiff inconsistent with what is here decided.

*Decree affirmed with costs.*