EARLE G. ESTEY *vs.* WILLIAM GARDNER & others.

Norfolk.    December 11, 1934. — June 26, 1935.

Present: RUGG, C.J., CROSBY, FIELD, & LUMMUS, JJ.

*Trust*, Death of trustee. *Descent and Distribution. Husband and Wife. Res Judicata. Equity Pleading and Practice*, Appeal, Requests and rulings.

Upon the death of a trustee of land, the trustee's spouse takes no title, and the bare legal title passes to the trustee's heirs until appointment of a new trustee; and if meanwhile the spouse occupies the land, he is chargeable for the use, less the amount paid by him for taxes, repairs and improvements.

The dismissal of a petition by one to be appointed trustee under a deed of trust was no bar to a later petition for the appointment of a trustee brought by the *cestui que trust* through the former petitioner as his guardian.

On appeal in a suit in equity, requests for rulings of law are immaterial and will be disregarded by this court.

CONTRACT, originally by Susan E. Shaw as guardian of Earle G. Estey against William Gardner. Writ dated March 24, 1932.

In the Superior Court, Earle G. Estey was substituted as plaintiff and William E. Gardner and Richard Gardner were added as defendants, and the action was amended into a suit in equity. The suit was heard by *Williams*, J. The defendant William Gardner appealed from the final decree.

*A. S. Allen*, for the defendant William Gardner.

*F. J. Squires*, (*L. B. Phister* with him,) for the plaintiff.

CROSBY, J. The original plaintiff "Susan E. Shaw, guardian of Earle G. Estey," filed a motion to substitute as plaintiff "Earle G. Estey, plaintiff, by his guardian, Susan E. Shaw," and to amend the action at law into a suit in

equity. The motion was allowed, and a bill was filed praying that a trustee be appointed under a deed of trust of certain premises situated in Canton in the county of Norfolk. There was a further prayer in the bill that the defendants William Gardner, William E. Gardner and Richard Gardner be compelled to account to the plaintiff for the use and occupation of the premises.

The trial judge found the following facts: On May 11, 1906, Harriet L. Estey, a widow, conveyed to her unmarried daughter Maude I. Estey the land in question. The deed, after the granting clause and description of the property, and before the *habendum* clause, provided as follows: "This conveyance is made in trust for the benefit of my son Earle G. Estey for and during the term of his natural life." The *habendum* clause immediately following read: "to the said Maude I. Estey and her heirs and assigns to their own use and behoof forever." The premises consisted of about forty-eight acres of farm and wood land with a dwelling house, barns and sheds. Earle G. Estey was and had been from birth a defective child. He was of deficient mentality and has since been adjudged insane. The judge found that "It was the intention of the mother to deed the homestead to Maude in trust for Earle in order to provide a home for him during his life." At the time of the conveyance the mother, daughter and son lived together on the conveyed premises which were the family homestead. There were seven other children who lived elsewhere. In 1909 Maude married the defendant William Gardner who came to live at the homestead. Two children, the defendants William E. Gardner and Richard Gardner, were born, and the Gardner family moved upstairs in the house, occupying four or five rooms. The mother (Harriet L. Estey) received a pension, and Gardner contributed something to the expenses of the household. His earnings were turned over to his wife, and although she paid something to her mother the amount of such contributions did not appear in evidence. The mother died November 5, 1922; until her death she paid the expenses of the household with some small help from the defendant William Gardner. After his mother's death Earle

continued to live with the Gardners and was well taken care of by Maude, of whom he was very fond. She maintained the homestead and made a home for Earle with the assistance of the other brothers and sisters as to taxes and insurance, which were paid in the main by Henry W. Estey, a brother, who is the administrator of his mother's estate. Maude I. Gardner died April 13, 1929. After her death Earle continued to live with William Gardner and his two sons, who have remained in possession of the premises. In the spring of 1930 Mrs. Shaw, a sister of Earle, believed, because of marks observed on Earle's person, that he was being physically abused by the Gardners, and on May 7, 1930, was appointed guardian of Earle. Since June 9, 1930, he has lived with her. The evidence was insufficient for the trial judge to find that Earle was physically abused by the defendants. He was looked after by William Gardner and his former housekeeper, who is now his wife, in substantially the same manner as before the death of Maude. The trial judge found that there was necessarily lacking the affectionate care which Earle received from his sister. Previously, on January 7, 1930, Susan E. Shaw petitioned the Probate Court to be appointed trustee of the estate of Earle under the deed of May 11, 1906, as successor to the deceased Maude I. Gardner. The petition was dismissed on November 23, 1931. A revision of the decree on January 6, 1932, sets forth no finding or ruling as a basis for the decree. The defendants William Gardner and his two sons have remained in possession of the premises since April 13, 1929. William Gardner paid the taxes on the premises for 1930 and 1931, amounting to $507.33. The taxes for the years 1932 and 1933 have not been paid. Since the death of his wife Gardner has expended $965.60 for repairs and improvements, and has benefited the property to that amount. The insurance has been paid by Henry W. Estey. The value of the use and occupation of the property is $35 per month.

A decree was entered appointing Susan E. Shaw trustee of the real estate for the benefit of Earle G. Estey, and ordering the defendants to deliver up possession to her.

The defendant William Gardner was ordered to pay to Susan E. Shaw the sum of $172.37 as the difference between the value of the use and occupation of the premises since June 9, 1930, at $35 per month, and the credits for taxes paid and for repairs and improvements made by William Gardner. The defendant William Gardner appealed from this decree.

The evidence is not reported; therefore the findings of fact must be taken as final. The only remaining question is whether the decree was rightly entered on the basis of the facts found. *Melville Shoe Corp.* v. *Kozminsky*, 268 Mass. 172, 174. It is plain that by the deed of May 11, 1906, Maude I. Estey took the premises in trust for Earle G. Estey for his life, and that he took an equitable life estate in the premises. *Lewis* v. *Shattuck*, 173 Mass. 486, 487. See *Roberts* v. *Lynn Ice Co.* 187 Mass. 402, 407. It cannot be said, even if material, that the subsequent acts of the parties are inconsistent with this intent. No monetary return was at any time derived from the property, with the possible exception of the short period when William Gardner was boarding with the family, before his marriage to Maude I. Estey. It is found that Earle G. Estey was supported largely by his mother with some help from the Gardners and, later, from the other brothers and sisters; that the value of the use and occupation of the premises was only $35 per month. It would seem that, under the arrangement apparently contemplated from the start, Earle G. Estey received in terms of living quarters, service, food and lodging, an increment at least equivalent to this amount, and therefore the somewhat informal arrangement is not inconsistent with the creation of an equitable life estate in Earle G. Estey.

It is also apparent that on the death of Maude I. Gardner, the original trustee, the office of trustee became vacant and the Superior Court had jurisdiction to appoint another trustee. G. L. c. 203, § 5. See *Parker* v. *Converse*, 5 Gray, 336, 339; *Harlow* v. *Cowdrey*, 109 Mass. 183, 184. In any event the defendant William Gardner, surviving husband of the original trustee, would take no title to the land.

*Crandall* v. *Ahern,* 200 Mass. 77. Although the legal title passes to the sons of Maude I. Gardner under G. L. c. 190, § 3, *Harlow* v. *Cowdrey, supra,* they do not become trustees, but simply hold the legal title until the appointment of a new trustee.

There was no error in charging the defendant William Gardner with the use and occupation of the premises, less taxes paid, and repairs and improvements made by him. *Thompson* v. *Thompson,* 140 Mass. 28, 30, 31. Compare *Bradbury* v. *Birchmore,* 117 Mass. 569, 580. Cases like *Jones* v. *Donnelly,* 221 Mass. 213, and *Burke* v. *Willard,* 243 Mass. 547, are not in point, since they hold merely that any action of contract for use and occupation will not lie when there is no relationship of landlord and tenant. After Earle G. Estey left the premises, the whole increment thereof accrued to the defendant William Gardner.

The judgment for the defendant William Gardner in a former proceeding in the Probate Court, seeking the same relief as in the present bill, is not a bar in this proceeding. The former action was begun by Susan E. Shaw in her own name on January 7, 1930, and before she had been appointed guardian of Earle G. Estey. In the present proceeding the plaintiff is Earle G. Estey, although, since he is *non compos mentis,* he brings this suit by his guardian, Mrs. Shaw. It is apparent that the parties in the two proceedings are not identical, nor is Earle G. Estey in privity with Mrs. Shaw, since he claims no rights through her. Consequently the former judgment cannot be a bar to the maintenance of the present bill. *Giedrewicz* v. *Donovan,* 277 Mass. 563, 565, and cases cited.

The defendants presented ten requests for rulings. Where, as here, a case comes up on appeal such requests have no proper place in equity practice. The facts having been found, the question is what decree should be entered on the facts. If the trial judge entered the right decree, an error in dealing with the requests would be immaterial. If he entered the wrong decree, his error will be corrected without any requests. Such requests can be effective only where the case comes to this court by a bill of exceptions under the

common law practice. In equity cases coming up by appeal requests for rulings have no standing as such. *Graustein* v. *Dolan*, 282 Mass. 579. *Norcross* v. *Mahan*, 283 Mass. 403. *Albert Richards Co. Inc.* v. *Mayfair, Inc.* 287 Mass. 280.

A slight error appears in the amount of the decree entered against the defendant William Gardner. The trial judge charged him in the sum of $1,645 for use and occupation, and credited him with $507.33 for taxes paid and $965.60 for improvements, the total credit being $1,472.93. This sum deducted from $1,645 for use and occupation leaves $172.07 instead of $172.37 for which sum as damages the decree was erroneously entered. With this correction the final decree is affirmed.

*Ordered accordingly.*